# JOHN STEPHEN NAGLE *v.* BETH ANN NAGLE HOOKS

[No. 122, September Term, 1982.]

*Decided May 31, 1983.*

124

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Barbara Mello,* with whom were *Francis X. Gaegler* and *Gaegler & Hopewell* on the brief, for appellant.

*Allen J. Kruger,* with whom were *Goldman, Nichols, Kovelant, Pedersen, Hurtt & Kruger* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

In this case we are called upon to determine who may waive the statutory psychiatrist-patient privilege provided for in Section 9-109 (b),[1] Courts and Judicial Proceedings Article, Maryland Code (1974, 1980 Repl. Vol.), in a child custody proceeding.

---

1. Section 9-109 (b):

> *"Privilege generally.* — Unless otherwise provided, in all judicial, legislative, or administrative proceedings, a patient or his authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications relating to diagnosis or treatment of the patient's mental or emotional disorder."

Little need be said concerning the background of the continuing battle over the custody of the minor child of John Stephen Nagle and his former wife, Beth Ann Nagle Hooks. Suffice it to say that the parties were divorced *a vinculo matrimonii* on January 4, 1980, and permanent custody of the child was awarded to its mother, Mrs. Hooks. An appeal to the Court of Special Appeals by Mr. Nagle resulted in a remand of the matter for further factual proceedings. Thereafter, on June 12, 1981, the chancellor issued detailed findings of fact to support a continuation of permanent custody with Mrs. Hooks. Following a second appeal by Mr. Nagle, the Court of Special Appeals, in an unreported opinion, affirmed the decree of the chancellor. *Nagle v. Nagle,* CSA, Sept. Term 1981, No. 888 (March 10, 1982) (per curiam). Before this decision was handed down, Mr. Nagle filed a petition to modify custody upon which a hearing was held in November, 1981, resulting in a dismissal. That decision precipitated yet another appeal by Mr. Nagle to the Court of Special Appeals. That court again affirmed the chancellor in an unreported opinion. *Nagle v. Hooks,* CSA, Sept. Term 1981, No. 1644 (August 10, 1982) (per curiam). We thereafter granted certiorari to determine a question of public importance, i.e., whether a custodial parent may refuse to waive, on behalf of a minor child, in a custody action, the statutory psychiatrist-patient privilege regarding communications relating to diagnosis or treatment of a minor's mental or emotional disorder.

Specifically, what gave rise to the question before us is quite straightforward. At the hearing on Mr. Nagle's last petition, he attempted to have a psychiatrist, who had been seeing the child, testify. On the basis that Mrs. Hooks had not given her consent to waive the privilege, and reasoning that each parent would have to so consent, the chancellor refused to allow the witness to testify regarding matters within the privilege. The chancellor stated in pertinent part:

"So the patient may assert the privilege. 9-109 (b) privilege generally provides that unless otherwise provided in all judicial, legislative or administra-

tive proceedings, a patient or his authorized representative has a privilege to refuse to disclose and to prevent a witness from disclosing communications relating to diagnosis or treatment of the patient's mental or emotional disorder, and it would seem to me that both Mr. and Mrs. — no, Mr. Nagle and Mrs. Hooks would be the ones that would have to waive it in behalf of their child.

MR. GAEGLER [Attorney for Mr. Nagle]: Could either/or do it?

THE COURT: I don't think so. You see, you are saying then that the child has a choice of selecting who shall be his representative when they must make the choice as to who will be his representative. That is the impression that I am getting. You are asking the child to choose a representative, and 1 don't know that he could do it.

They as parents might do it, but I don't think that either one of them could waive the privilege so as to allow the communication to come in against the other."

The Court of Special Appeals, in affirming the chancellor, did so without deciding whether both parents had to consent to a waiver. Rather, it held "that the parent having custody under a court order ha[d] authority to assert the privilege." *Nagle v. Hooks, supra,* Sept. Term 1981, No. 1644, slip op. at 3. In our view, the chancellor erred, as did the Court of Special Appeals.

Prior to 1966, there was no privilege of nondisclosure of communications between patient and psychiatrist relating to diagnosis or treatment of the patient's mental or emotional disorder. By Ch. 503, Laws of 1966, the legislature enacted what was to become Section 13A of Article 35 of the Annotated Code providing for the privileged communications. In substantially the same terms, this section has now become section 9-109 of the Courts and Judicial Proceedings Article, with one notable exception. In the original 1966

legislation, it was specifically provided that disclosure could be compelled by a judge "in cases involving the custody of children if, in [the judge's] opinion, such disclosure [wa]s necessary to a proper determination of the issue of custody." That provision was eliminated by the legislature in 1977 (Ch. 685, Laws of 1977) for some unexplained reason, and is thus not the law today.

In pertinent part, section 9-109 makes specific the procedure to be followed under facts similar to the instant case. There appears to be no question as to how the privilege of nondisclosure is to be exercised. Section 9-109 (c) provides:

> "If a patient is incompetent to assert or waive this privilege, a guardian shall be appointed and shall act for the patient. A previously appointed guardian has the same authority."

Certainly a minor under the age of 10 years would be incompetent to make such a decision. While the statute does not define "incompetent," we believe, in the context here, it is broad enough to encompass one under disability, as that term is generally understood. In the instant case Mr. Nagle, albeit somewhat untimely, did request the chancellor to appoint a guardian for the child. The record indicates that prior to hearing testimony the chancellor stated he would not object to an attorney being appointed to represent the child, although he would not continue the matter to allow appointed counsel to "have some input." Ultimately, the chancellor denied the request. It appears to us that the statute is mandatory, and, accordingly, the chancellor erred in refusing to appoint a guardian to act for the child regarding the assertion or waiver of privilege of nondisclosure pursuant to section 9-109. Although arguably the parent who pursuant to court order has custody of a child could qualify as a "previously appointed guardian" under section 9-109 (c), it is patent that such custodial parent has a conflict of interest in acting on behalf of the child in asserting or waiving the privilege of nondisclosure. We believe that it is inappropriate in a continuing custody "battle" for the

custodial parent to control the assertion or waiver of the privilege of nondisclosure. In resolving custody disputes, we are "governed by what is in the best interest of the particular child and most conducive to his welfare. This best interest standard is firmly entrenched in Maryland and is deemed to be of transcendent importance." *Ross v. Hoffman,* 280 Md. 172, 174-75, 372 A.2d 582, 585 (1977) (footnote omitted). Keeping in mind "the best interest of the child," we believe the appointment of an attorney to act as the guardian of the child in the instant matter is required.[2] Furthermore, the appointment of a neutral third party would eliminate the very real possibility, as may exist in this case, of one of two warring parents exercising the power of veto for reasons unconnected to the polestar rule of "the best interests of the child."

Accordingly, we hold that when a minor is too young to personally exercise the privilege of nondisclosure, the court must appoint a guardian to act, guided by what is in the best interests of the child. We also hold that, in this event, the parents, jointly or severally, may neither agree nor refuse to waive the privilege on the child's behalf. We shall, therefore, reverse the decision of the Court of Special Appeals and remand the case to that court with instructions to reverse

---

2. This ruling is consistent with Md. Code (1974, 1980 Repl. Vol.), Courts and Judicial Proceedings Art., § 3-604, which provides:

"The court, for good cause, may appoint an attorney to represent a minor in any action brought under this subtitle in which the issue of custody, visitation rights, or the amount of support is contested and may levy counsel fees against either or both parents as is just and proper under all the circumstances. An attorney appointed to represent a minor may not represent any party to the action."

the judgment of the Circuit Court for Prince George's County and remand for further proceedings.

> *Judgment of Court of Special Appeals reversed; remanded to that Court with instructions to reverse the judgment of the Circuit Court for Prince George's County and remand for further proceedings consistent with this opinion; costs to be paid by appellee.*